UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT STERN,<br><br>                      Plaintiff,<br><br>v.<br><br>RMG SUNSET, INC., et al.,<br><br>                      Defendants. | Case No.: 17-CV-1646 JLS (NLS)<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>(ECF No. 9) |

Presently before the Court is Plaintiff Scott Stern's Motion to Remand, ("MTN," ECF No. 9). Also before the Court are Defendants RMG Sunset, Inc., PB Cantina, LLC, Cabo Cantina L.A., LLC, and Cabo Cantina, LLC's Response in Opposition to, ("Opp'n," ECF No. 11), and Plaintiff's Reply in Support of, ("Reply," ECF No. 13), Plaintiff's Motion to Remand. The Court vacated the hearing and took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 12.) Having considered the parties' arguments and the law, the Court **DENIES** Plaintiff's Motion to Remand and **DENIES** Plaintiff's request for attorney's fees.

## BACKGROUND

On July 13, 2016, Plaintiff filed an amended class action complaint against Defendants in the Superior Court for the State of California, County of San Diego. (First

1

Am. Compl. ("FAC"), ECF No. 1-2.) Defendants operate fourteen restaurants throughout Southern California, including the Baja Beach Café in Pacific Beach, California. (*Id.* ¶ 2.) Plaintiff visited the Café on February 24, 2016 and purchased several meals. (*Id.*) Defendants charged an allegedly undisclosed service charge of 4.9% to customers, including Plaintiff, for any food and drink. The additional fee was not posted in the lobby or the menu. Plaintiff alleges that he noticed the service charge upon later inspection of his bill and alleges that had he known about the fee he would not have eaten at Defendants' restaurant. (*Id.*)

Plaintiff's original complaint alleged four causes of action: violation of the Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*, "CLRA"), violation of the False Advertising Act (Cal. Bus. & Prof. Code § 17500 *et seq.*), violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*, "UCL"), and unjust enrichment. (*See generally id.*) When Plaintiff commenced his state court action, he limited the proposed class action to California citizens. (*Id.* ¶ 22.) On March 8, 2017, a different plaintiff filed a "copycat" case in Los Angeles Superior Court alleging similar causes of action based on the undisclosed service charges. (MTN 4.)[1] In response, Plaintiff Scott Stern filed a motion for class certification in his action. In the motion for class certification, Plaintiff amended his class definition in two ways. First, where the FAC limited the class to California citizens, the motion for class certification included all persons. (ECF No. 1-3, at 40.) Second, where the FAC limited the definition to those who paid the "undisclosed" service charge, the class certification included all persons who "paid a surcharge at one of Defendants' restaurants," i.e. the surcharge was no longer limited to the "undisclosed" charge. (*Id.* at 53–54.) Defendants removed the case to this Court on August 16, 2017. Plaintiff now seeks remand to state court.

## LEGAL STANDARD

In cases "brought in a State court of which the district courts of the United States

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

have original jurisdiction," a defendant may remove the case to federal district court. 28 U.S.C. § 1441(a). Under section 1446(b), there are two thirty-day windows when a case can be removed. *Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1189 (9th Cir. 2015). First, a defendant has thirty days to remove after receiving an initial complaint that was removable. 28 U.S.C. §1446(b)(1). If the initial complaint was not removable, another thirty-day removal window begins after receipt of the first document from which it can be ascertained that the case is removable:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3).

The second removal window is triggered by the occurrence of an event that first discloses that the case is or was removable. *See Reyes*, 781 F.3d at 1189. The Ninth Circuit employs an objective test to determine whether a document makes a case removable. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) ("[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry."). Thus, the thirty-day window does not open based on the subjective knowledge of a defendant with respect to the elements that make a case removable.

The Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711–15, gives federal district courts original jurisdiction over class actions involving at least 100 class members, with minimal diversity, and an amount in controversy exceeding $5,000,000. 28 U.S.C. § 1332(d). "A CAFA case may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013) (citing 28 U.S.C. § 1453(b)). Consequently, the "theoretical possibility of abusive

3

17-CV-1646 JLS (NLS)

gamesmanship" is a particular concern in CAFA cases. *Id.* Moreover, although courts generally "strictly construe the removal statute against removal jurisdiction," *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance," *id.* (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)), there is no anti-removal presumption in cases invoking CAFA, *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). Nevertheless, "[t]he party seeking the federal forum [in CAFA cases still] bears the burden of establishing that the statutory requirements of federal jurisdiction have been met," *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013), and, "if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015).

## ANALYSIS

Plaintiff challenges Defendants removal on jurisdictional grounds. First, Plaintiff argues that the amount in controversy is not in excess of $5,000,000, as required by CAFA. (MTD 5–6.) Second, Plaintiff contends that his motion for class certification inadvertently extended the class definition to all persons rather than California citizens and he intends to modify his class definition at the earliest opportunity. (*Id.* at 7.) Additionally, Plaintiff requests attorney's fees if the Court remands the case. (*Id.*) Plaintiff does not contend Defendants' removal was untimely[2] or that the proposed class has at least one hundred members. The parties dispute only amount in controversy and minimal diversity. The Court considers the issues in turn.

**I.    CAFA Amount in Controversy**

---

[2] Plaintiff's state court motion for class certification was filed August 4, 2017. (ECF No. 1-3, at 3.) Prior to the motion for class certification, there was no minimal diversity of citizenship because Plaintiff limited the proposed class to California citizens. The motion changed the class definition to all citizens, which would create minimal diversity of citizenship and objectively put Defendants on notice that their second 30-day removal window was open. 28 U.S.C. § 1446(b)(3); *see Reyes*, 781 F.3d at 1189. Defendants removed the case on August 16, 2017. Therefore, Defendants' removal was timely.

"[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart*, 135 S. Ct. at 553. If, however, a plaintiff contests the amount-in-controversy, "removal . . . is proper on the basis of an amount in controversy . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $5,000,000. 28 U.S.C. § 1446(c)(2)(B); *Dart*, 135 S. Ct. at 553–54.

Here, Plaintiff contests the amount in controversy, (*see* MTD 6), and, therefore, the Court must determine whether Defendants have met their burden regarding this issue. Specifically, Plaintiff argues that Defendants' calculations regarding the amount in controversy are flawed. To that end, Plaintiff states that his FAC only seeks to disgorge Defendants of the undisclosed service charge and does not seek recovery for all food and drink sales made during the class period. (*Id.*) Plaintiff also seeks an injunction against Defendants—a corrective campaign concerning the undisclosed service charge. Plaintiff argues the campaign "could cost as little as a few hundred dollars." (*Id.*) According to Plaintiff, the sum of these amounts are less than $5,000,000 and Defendants offer no evidence establishing $5,000,000 as the amount in controversy. (*See id.*)

Defendants argue that Plaintiff's causes of action in his FAC are not limited to restitution of the service charges, but instead include "recovery of the full purchase price paid by each putative class member." (Opp'n 14.) Yet, Defendants seek to prove that no matter which calculation the Court uses—restitution alone or restitution plus damages—Plaintiff's amount in controversy is above the $5,000,000 threshold.

### A. *Restitution-Based Amount in Controversy*

Defendants calculate the amount in controversy in the following manner. First, they submit evidence that the total service charge collected by Defendants' fourteen

restaurants during the class period amounts to $2,102,754.23.[3] (*Id.* at 15 (citing Declaration of Milton Zampelli ("Zampelli Decl."), ECF No. 11-1, ¶ 3).) Second, Defendants state that Plaintiff explicitly seeks punitive damages through his CLRA cause of action. (*Id.* (citing FAC, Ex. 1, at 33).) Defendants argue that, for purposes of determining removal amount in controversy, district courts consider a one to one (1:1) ratio of punitive to compensatory damages. (*Id.* (citing *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007); and *Bayol v. Zipcar, Inc.*, No. 14-cv-2483, 2015 WL 4931756, at *9 (N.D. Cal. Aug. 18, 2015)).) Under the conservative ratio, Defendants would tally an additional $2,102,754.23. (*Id.* at 16.)

Third, Defendants note that Plaintiff requests attorney's fees, which Defendants argue should be considered in the amount in controversy calculation when fees are awardable by statute. (*Id.* (citing *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007), *abrogated on other grounds*, *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013)).) Plaintiff seeks statutorily provided attorney's fees under his CLRA cause of action. (*Id.* (citing Cal. Civ. Code § 1780(e)).) Defendants urge the Court adopt a measure of attorney's fees at twenty-five percent (25%) the amount in controversy. Twenty-five percent is the Ninth Circuit benchmark in common fund cases. (*Id.* (citing *Rodriguez v. Cleansource, Inc.*, No. 14-CV-789-L(DHB), 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2015); and *Jasso v. Money Mart Exp., Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465, at *7 (N.D. Cal. Mar. 1, 2012)).) Defendants calculate twenty-five percent of total recovery—restitution plus punitive damages—as $1,051,377. (*Id.*)

Fourth, Plaintiff seeks declaratory and injunctive relief in the form of an order

---

[3] "A court can consider evidence in deciding a remand motion, including documents that can be judicially noticed." *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 941 (C.D. Cal. 2014) (citing cases). Neither party objected to the other party's proffered exhibits. The Court therefore considers the evidence Defendants submitted with their Opposition in determining the Motion to Remand as well as Plaintiff's Request for Judicial Notice submitted with his Reply brief. *See, e.g.*, *Leon v. Gordon Trucking, Inc.*, 76 F. Supp. 3d 1055, 1063–64 (C.D. Cal. 2014) (considering email evidence in granting motion to remand); *Geonkova v. Sunrise Senior Living Mgmt., Inc.*, No. CV 10-01494-PHX-MHM, 2010 WL 5342951, at *3 (D. Ariz. Dec. 21, 2010) (same).

requiring Defendants to make certain price disclosures and conduct a corrective marketing campaign. (*Id.* at 16–17.) Defendants argue that such an equitable remedy will be costly. (*Id.* at 17 (citing *Anderson v. Seaworld Parks & Entm't, Inc.*, 132 F. Supp. 3d 1156, 1163–65 (N.D. Cal. 2015)).) However, Defendants acknowledge that even if the Court were to accept Plaintiff's claim that the cost of the corrective campaign truly were only "a few hundred dollars" then the amount in controversy would still exceed the $5,000,000 threshold. Defendants do not provide a reliable figure for injunctive relief; therefore, the Court will not speculate the value for injunctive relief. Totaling the restitution, punitive damages, and attorney's fees alone yields $5,256,885. (*Id.* (citing Zampelli Decl. ¶¶ 3–5).)

In reply, Plaintiff asserts two arguments against Defendants' amount in controversy calculation. First, Plaintiff contends that in the "copycat" case filed in Los Angeles, to which Defendants are a party, Defendants did not disclose the total value of the surcharges. (Reply 3.) Plaintiff suggests that Defendants knew the total number of meals and the total amount of surcharges, but they chose not to disclose this figure in the copycat litigation. Plaintiff suggests that Defendants' omission allowed them to present Plaintiff with sales reports totaling $1.8 million, but allow them to present a different number to the Court. (*Id.*)

"When measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Fong v. Regis. Corp.*, No. C 13-4497 RS, 2014 WL 26996, at *2 (N.D. Cal. Jan. 2, 2014) (citing *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); and *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 399 (2d Cir. 2003)). Here, Plaintiff urges comparison to the amount Defendants settled the

copycat Los Angeles class action as a basis to evaluate the present amount in controversy. The foregoing citations demonstrate that such an argument is unfounded. What matters here is the amount placed in controversy by Plaintiff's complaint—not what Defendants value a settlement in a different case.

Defendants present sales figures from the fourteen restaurants supporting their calculations. (*See* Zampelli Decl., Ex. 1, ECF No. 11-2) Plaintiff appears to indirectly dispute the sales figures with documents from the Los Angeles settlement. (Reply 3 (citing ECF No. 13-3, ¶ 3).) Plaintiff's referenced document discloses that Defendants knew the average price of the meal and average amount of the surcharge for the class period. (ECF No. 13-3, ¶ 3.) Yet, Plaintiff does not further explain how Defendants' knowledge of their own sales figure undermines Defendants sales reports. Further, Plaintiff does not provide any citation or explanation for his statement that Defendants presented him with sales reports totaling approximately $1.8 million, but Defendants presented different sales reports to support their Opposition brief.[4] (Reply 3.) In sum, Plaintiff's argument invites the Court to reference a different class action in considering the amount in controversy. Such a consideration is improper—the ultimate inquiry is the amount Plaintiff placed into controversy. The Court finds Defendants have carried their burden to show, by a preponderance of the evidence, their amount in controversy calculations are valid.

Second, Plaintiff argues that the twenty-five percent attorney's fees benchmark is not an appropriate measure because Plaintiff's class action is an injunctive relief class action and the lodestar method is appropriate for injunctive class actions. (*Id.* at 4–5 (citing *Wershba v. Apple Comput. Inc.*, 91 Cal. App. 4th 224, 254 (Ct. App. 2001); and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029–30 (9th Cir. 1998)).) Plaintiff states that, under the lodestar method, Plaintiff's counsel has not billed the hours required to meet Defendants' calculations. (*See id.* at 5.)

---

[4] Nor is the $1.8 million figure readily apparent in Plaintiff's Request for Judicial Notice. (*See* ECF Nos. 13-1 to 13-6.)

8

17-CV-1646 JLS (NLS)

Plaintiff's cited authority is instructive. In *Hanlon*, the Ninth Circuit explained that "[i]n employment, civil rights and other injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof." 150 F.3d at 1029. Here, Plaintiff seeks more than injunctive relief. He seeks restitution and damages for him and the proposed class. (FAC 15.) If Plaintiff were to prevail, his efforts would create a common fund based on the restitution and damages. Unlike purely injunctive class actions where the attorney's fees are incalculable, Plaintiff's attorneys would receive a portion of the common fund. Further, district courts in this circuit use the twenty-five percent benchmark to evaluate attorney's fees to determine the amount of controversy. *See Rodriguez*, 2014 WL 3818304, at *4 (citing *Jasso*, 2012 WL 699465, at *7; and *Marshall v. G2 Secure Staff, LLC*, No. 2:14–CV–04322–ODW, 2014 WL 3506608, at *3 (C.D. Cal. July 14, 2014)). The Court finds Plaintiff's argument unpersuasive and applies the twenty-five percent benchmark to determine the amount in controversy.

In sum, the Court finds that Defendants have met their burden to show that Plaintiff's restitution, punitive damages, and attorney's fees exceeds $5,000,000. Specifically, Defendants calculate restitution, punitive damages, and attorney's fees at $5,256,885. This excludes the value of injunctive and declaratory relief, which the Court notes but does not include because neither party briefed a credible figure for the value of such relief.

### B. Restitution Plus Damages Amount in Controversy

Defendants argue that, in addition to restitution, Plaintiff also seeks additional damages based on the full price of each class member's meal, as opposed to just the hidden surcharge. (Opp'n 18.) If the Court includes the full cost of the meal, such a finding would further support the amount in controversy requirement. Defendants arrive at this conclusion by citing Plaintiff's FAC, which asks for restitution, damages and injunctive and declaratory relief. (*Id.* at 19 (citing FAC ¶¶ 2, 19–21, 41).) In his FAC, Plaintiff alleges that had he and the class members known of Defendants' surcharge, they

would not have gone to Defendants' restaurants. (*Id.* (citing FAC ¶¶ 2, 21, 63).) Defendants also point to the fact that after receiving Plaintiff's CLRA letter, they offered to reimburse Plaintiff the full cost of his meal. Plaintiff rejected this offer and in the FAC alleges that such a reimbursement would only partially reimburse him for his damages. (*Id.* (citing FAC ¶ 43).) Thus, Defendants argue that Plaintiff seeks more than restitution of the surcharge and the Court should include the cost of full meals and drink for all class members in the amount in controversy calculation.

Plaintiff replies that nowhere in the FAC does he allege that he or any class member is entitled to the entire price of a meal. (Reply 6.) Plaintiff contends that his claim is predicated on the undisclosed surcharges rather than the actual price of the meal. Moreover, Plaintiff argues that language in his CLRA demand letter is not the same as the pleadings itself and the Court should measure only the remedies sought in the FAC. (*Id.*)

The FAC contains language suggesting Plaintiff seeks recovery for more than the surcharge. For example, he alleges that "[h]ad Plaintiff known about the undisclosed Fee, Plaintiff would not have eaten at Defendants' restaurant." (FAC ¶ 2.) If true, then the measure of damages to make Plaintiff whole would be the cost of the entire meal. Plaintiff makes a similar allegation regarding some members of the proposed class: "Had Plaintiff and Class members known that Defendants were charging the additional fee, they would not have gone to Defendants['] restaurant, would have reduced their orders to stay within budget, or would have asked for a discount or waiver of the fee." (*Id.* ¶ 62.) Based on this language in the FAC, the Court finds it plausible that some members of the class would seek damages beyond restitution of the surcharge. Moreover, Plaintiff's prayer for relief distinguishes between restitution and damages. (*Id.* at 15.) Thus, Plaintiff conceived receiving some award beyond "restitution and disgorgement of Defendants' ill-gotten gains." (*Id.*)

The Court must assume that Plaintiff's claims are true and that he will prevail on those claims at trial. *Fong*, 2014 WL 26996, at *2. Therefore, the Court considers the

full cost of the meals in the amount in controversy.[5]

## II. CAFA Diversity of Citizenship

The Ninth Circuit has recognized that "the core principle of federal removal jurisdiction on the basis of diversity" is "that it is determined (and must exist) as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transport Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002); *see also Houston & T. C. Ry. Co. v. Shirley*, 111 U.S. 358, 360–61 (1884) ("[U]nder the act of March 3, 1875, c. 137, a suit c[an]not be removed on the ground of citizenship, unless the requisite citizenship existed both when the suit was begun and when the petition for removal was filed.") (citing *Gibson v. Bruce*, 108 U.S. 561, 562 (1883)); *Petrop v. Lassen Art Publ'ns, Inc.*, 939 F. Supp. 742, 744 (D. Haw. 1995) ("[D]iversity must exist at the time the original action was filed [in state court] as well as at the time the petition for removal is filed." (second alteration in original and internal quotation marks omitted)); *Strasser v. KLM Royal Dutch Airlines*, 631 F. Supp. 1254, 1256 (C.D. Cal. 1986) ("It is well established that diversity of citizenship, as the basis of removal jurisdiction, must exist both when an action is filed in state court and when defendant petitions for removal to federal court."). Notwithstanding this rule, a complaint that was not removable when commenced may become removable if the plaintiff voluntarily amends the pleadings. *Self v. Gen. Motors Corp.*, 588 F.2d 655, 659 (9th Cir. 1978).

Plaintiff argues that his FAC contained a class definition limited to only California citizens. (MTN 7.) Thus, when Plaintiff filed the FAC minimal diversity did not exist because Plaintiff is a California citizen, his proposed class was limited to California citizens, and Defendants are businesses organized under the laws of California. (See FAC ¶¶ 9–14.) His state court motion for class certification "inadvertently extended the class definition to '[a]ll persons,' rather than 'California citizens.'" (*Id.* (alteration in

---

[5] The parties do not provide the exact dollar figure for all meals and drink during the class period. However, Defendants' declaration, attached to the Opposition, includes sales reports with the total sales per restaurant, per month. (*See* Zampelli Decl., Ex. 1.) Without calculating exact sums, it is clear that the total sales exceed $5,000,000.

original) (quoting ECF No. 1, at 4).)  Plaintiff concedes that minimal diversity exists under the definition presented in his motion for class certification, but he never intended to represent a nationwide class.  (*Id.*)  Plaintiff concludes by stating that the change in class was an "oversight" and that he intends to modify his class definition to California citizens "at his earliest opportunity."  (*Id.* (citing Declaration of Lacy Wells, ECF No. 9-2, ¶ 6).)

Defendants cites *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1276 (9th Cir. 2017), as standing for the proposition that a class action plaintiff cannot amend the pleadings, ex post, to eliminate minimal diversity.  Defendants argue that *Broadway Grill* distinguished between allowing amendment that would clarify the allegations, which was permissible, and allowing an amendment that changed the definition of the class itself, which was impermissible.  (Opp'n 21 (citing *Broadway Grill*, 856 F.3d at 1277–79).)  Defendants argue that Plaintiff falls into the latter category and cannot change his class definition to avoid federal jurisdiction.  (*Id.*)

The Court agrees with Defendants.  Where, as here, the initial state pleading is not subject to federal jurisdiction, 28 U.S.C. § 1332(d)(7) requires a district court to determine citizenship "as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction."  *Broadway Grill* explained that the circuit courts are in agreement that "whether remand is proper must be ascertained on the basis of the pleadings at the time of removal."  856 F.3d at 1277 (collecting cases).  The court went on to comment, "[t]his unanimity seems firmly to establish that plaintiffs' attempts to amend a complaint after removal to eliminate federal jurisdiction are doomed to failure."  *Id.*  The Court examines Plaintiff's motion for class certification, as of the date of service, for minimal diversity.  Plaintiff's motion clearly meets the minimal diversity standard because it contains no limiting provision as to citizenship in the class.  (ECF No. 1-3, at 53–54.)  Thus, any non-California patron of Defendants' restaurants would be included in Plaintiff's class definition.  Plaintiff's argument that his class definition was "inadvertent" or an "oversight" is unpersuasive.

The Court cannot credit Plaintiff's subjective intent over the objective disclosures in the motion for class certification. This sort of post-removal amendment to remove CAFA jurisdiction is exactly the behavior prohibited under *Broadway Grill*.

Nor does Plaintiff meet the exception discussed in *Broadway Grill*. There, the court distinguished an exception to the post-removal amendment rule, recognized in *Benko v. Quality Loan Service Corp.*, 789 F.3d 1111 (9th Cir. 2015). *Benko* allowed plaintiffs the opportunity to amend a complaint after removal, but only for the limited purpose of clarifying jurisdiction rather than altering the definition of the class. *Broadway Grill*, 856 F.3d at 1277 (citing *Benko*, 789 F.3d at 1117). The *Benko* exception provides no shelter for Plaintiff here—if the Court were to allow post-removal amendment to only include California citizens it would clearly alter the definition of the class and allow Plaintiff to avoid Federal jurisdiction. Thus, Plaintiff's diversity of citizenship argument is unavailing.

## CONCLUSION

In sum, the Court finds Defendants establish, by a preponderance of the evidence, that jurisdiction exists under CAFA and this case was properly and timely removed from state court. For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand, (ECF No. 9). Because Plaintiff has not prevailed on his Motion to Remand, the Court **DENIES** Plaintiff's request for attorney's fees.

**IT IS SO ORDERED.**

Dated: May 21, 2018

Hon. Janis L. Sammartino
United States District Judge